UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

K. Y.,

        Plaintiff,

    v.

KILOLO KIJAKAZI,

        Defendant.

Case No. 22-cv-06197-VC

**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 16, 23

      K.Y.'s motion for summary judgment is granted. The Commissioner's cross-motion is denied. The case is remanded to the Social Security Administration for further administrative proceedings.

      As an initial matter, the Commissioner's brief did not adequately address many of the issues discussed in this ruling, and no attorney for the Commissioner appeared at the hearing on this appeal. For that reason alone, the Court would remand the matter. But in any event, the ALJ erred in several respects.

      First, the ALJ erred by failing to fully develop the record. "The ALJ always has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Garcia v. Commissioner of Social Security*, 768 F.3d 925, 930 (9th Cir. 2014) (citations and quotations omitted). "When a claimant is not represented by counsel, this responsibility is heightened." *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003). The ALJ failed to perform that responsibility here. For instance, the ALJ determined that K.Y. had the ability to manage her daily activities based in part on her adult function report. *See, e.g.*, AR 19. But K.Y. did not fill out a significant amount of information on that report. When K.Y. was

asked if she could complete household chores, she wrote "n/a (no house)." AR 260. (K.Y. is homeless.) When asked to "describe any changes in [hobbies and interests] since the illnesses, injuries, or conditions began," K.Y. again wrote, "n/a." AR 262. The ALJ did not ask K.Y. to expand on these limited answers at the hearing.

Throughout the hearing, the ALJ appeared to grow more and more concerned with wrapping up than with ensuring the record was adequately developed. Although it is difficult to make a determination based on the cold transcript alone, it appears that the hearing quickly took on an adversarial tone, limiting K.Y.'s ability to defend her interests. For instance, the ALJ asked if K.Y. had access to the exhibits that would form the basis of the decision, and K.Y. responded that she wasn't sure what the exhibits were. AR 46. The ALJ later asked if she objected to the exhibits, and K.Y. responded, "I wish I knew the context of all of this. I feel like I'm missing all the information." AR 48. The ALJ said that K.Y. was "provided access" to the exhibits but chose not to take "advantage of the opportunity that was provided," and moved on. AR 48.

Then, in her decision, the ALJ repeatedly cited to K.Y.'s participation in this hearing as evidence that she was not disabled, *see, e.g.*, AR 23, notwithstanding K.Y.'s obvious limitations. K.Y. participated in the hearing remotely. Because of her selective mutism, her typed statements were read into the record by a teleinterpreter. At various points in the hearing, K.Y. exhibited confusion with the process. When the ALJ asked if K.Y. had additional medical evidence to present, K.Y. responded by explaining that she had not received support for her medical issues, and that "the papers don't show the truth, so I'm hesitant about this right now without seeing anything." AR 49. The ALJ said she didn't understand, and so they would "just move forward at this time." AR 49. The ALJ's decision does not grapple with K.Y.'s apparent confusion—and the ALJ's own inability to understand K.Y.'s statements—at all.

The ALJ also did not properly evaluate K.Y.'s medical records. For instance, at step three, the ALJ assessed K.Y.'s ability to understand, remember, and apply information. AR 19. In assessing this area, ALJs consider a claimant's "abilities to learn, recall, and use information to perform work activities," like understanding and following instructions. 20 C.F.R. Pt. 404,

2

Subpt. P, App. 1, § 12.00E.1. The ALJ concluded that K.Y. had only a moderate limitation in this area, but that conclusion relied on a misinterpretation of the medical record and the applicable standard. The ALJ discounted K.Y.'s "variable" memory scores because K.Y.'s "visual memory scores revealed an intact memory system and [the examiner] suggested that poor verbal memory performance may be more attributable to her language disorder versus an amnestic disorder." AR 19. But the ALJ did not explain why the exact source of this limitation—whether it be an amnestic disorder or a language disorder—should matter. K.Y.'s medical report suggests that her language and psychological disorders have a real impact on her memory, one that makes her "reported occupational difficulties…understandable." AR 677. The ALJ's unexplained emphasis on the source of these limitations, rather than their effect on K.Y.'s ability to work, warrants reversal and remand.

Finally, the ALJ did not resolve substantial ambiguities in the record. Most significantly, the extent of K.Y.'s work history is unclear. At the hearing, K.Y. testified that she had only worked for one month, AR 53, and her earnings records show that she only made $35 in the first quarter of the year, AR 227. In a later report, K.Y. said she had been hired in March 2020. AR 341. If that date was correct, then K.Y. had actually worked for over a year. The Commissioner relies on K.Y.'s supposedly extensive work history as a reason to affirm the ALJ's holding. But the ALJ never resolved this question, and the Court is not in a position to resolve it in the first instance. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) ("[T]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."). The ALJ also appears to have ignored certain evidence related to K.Y.'s work history. The decision cites to the fact K.Y. was "currently working" as a reason to deny benefits, AR 23, even though it appears that K.Y. stopped working almost immediately after the hearing, *see, e.g.*, AR 778. Given the ALJ's failure to resolve these ambiguities, remand is appropriate.

On remand, the ALJ may reopen the administrative record and accept any additional evidence as appropriate.

//

**IT IS SO ORDERED.**

Dated: June 21, 2023

_____
VINCE CHHABRIA
United States District Judge